## Reinard's Estate.

*Husband and wife—Gift to husband—Evidence—Findings of fact.*

A finding by the court below that a wife of somewhat feeble mind did not give to her avaricious husband a sum of money which she received from her mother's estate, will not be reversed, where there is competent evidence to sustain the finding and there is no manifest error.

Argued Nov. 14, 1906. Appeal, No. 121, Oct. T., 1906, by Mahlon Reinard, Administrator of Harriet Reinard, deceased from decree of O. C. Berks Co., Dec. T., 1905, No. 30, dismissing exceptions to adjudication in Estate of Harriet Reinard, deceased. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Exceptions to adjudication.

BLAND, P. J., filed the following opinion:

As the judicial determination of each case depends upon its particular facts, it is essential, in considering the exceptions filed, to state the material facts of the case.

They are:

1. That the accountant, Mahlon Reinard, and the decedent, were married in 1867; and that they lived in wedlock until her death, November 12, 1896, a period of almost thirty years.

2. That during that period, the decedent received from the estates of her father and mother, the sum of $2,243.60.

3. That all the money so received by the decedent passed directly or indirectly through her to the accountant, during her lifetime; and, at her death, was in his possession; and that at her death, he claimed it as his own, by gift from her.

4. That notwithstanding the fact that he then claimed the $2,243.60, as a gift from her, he refused to bear the expenses of her burial and medical attendance, and the cost of a tombstone for her grave.

5. That on January 4, 1897, he obtained letters of administration on her estate, for the purpose of collecting from his daughter, Annie Missimer, the funeral expenses and the physician's bill; and that he collected from her for those purposes, and for refreshments furnished at the funeral of the decedent, and one-half the cost of a tombstone, the sum of $121.45.

6. That the account here was filed by him October 31, 1905, nine years after decedent's death; in which he charged himself with $400 "reserving to the accountant, however, the right of any defense he may have against the payment of said amount, by reason of the statute of limitations."

7. I have also found, on the testimony of five witnesses who knew the decedent many years, corroborated by the fact that the decedent was of admittedly unsound mind several years before her death, and by the fact that her father, Henry Zerr, gave her a restricted interest in her share of his estate, while he gave his five other children their shares absolutely, that the decedent was always somewhat weak in mind.

These are the main facts. It is a case which, in a sense, involves the relations and mutual rights and obligations of husband and wife. In a normal case of the marriage relation, it is safe to assume the existence of that mutual love and affection which grows as the years go by; and of an overwhelming sense of pain and loss, when the union, hallowed by innumerable touching memories, is broken, by death. How a normal man can look into the face of his dead wife, with whom he has lived for thirty years, and who, could her cold lips speak, could say to him, "I gave you all," without a heart melted in tenderness and a feeling of sacred obligation to lay her lovingly and tenderly in the earth, is inconceivable. General rules of law are based on normal facts; and those which declare the rights

of a husband with respect to a wife and her acts, are grounded on the supposition that his feelings and conduct in his relations with her were those of the ordinary man. The sordid, grasping man; he whose overmastering selfishness leaves no room in his heart for affection or justice to his wife, is not the type of man whom the rules of law favor. He is the kind of man whom the law suspects and whose acts it discredits; and whose calculating selfishness the law condemned in Watson v. Mercer, 6 S. & R. 49; Weeks v. Haas, 3 W. & S. 520; and Darlington's Appeal, 86 Pa. 512.

I take the conduct of Mahlon Reinard, after his wife's death, as typical of his conduct towards her and her estate, during her lifetime; and conclude that, as he was controlled by pure selfishness at the time when he should have been under the influence of a sense of justice to her, he certainly acted upon the same sordid motive in his relations with her, while she lived. If I am right in this inference, and if, as I have found, she was infirm in mind, and an easy subject of undue influence, the law declares the alleged gift of the principal of her estate, void, because such alleged gift is presumed to have been the effect of his dominating influence. He certainly had the motive to dominate her. There are a number of circumstances which confirm the opinions of the witnesses who testified that she was weak in mind. Although she attended school, she could not write her name; she spoke with difficulty; her talk was peculiar; for some years before her death she was of unsound mind; and for some reason her father gave her but a limited interest in her share of his estate, while he gave the shares of his remaining five children to them absolutely.

I think this case clearly lies within the sphere of operation of the principle declared and followed in Darlington's Appeal, 86 Pa. 512. In that case, at p. 519, Mr. Justice TRUNKEY, said: " On the one hand, it is not necessary to establish that there has been fraud or imposition upon the client; and on the other hand, it is not necessarily void, ipso facto. But the burden of establishing its perfect fairness, adequacy and equity is thrown upon the attorney. If no such proof is established, courts of equity treat the case as one of constructive fraud. In dealings between principal and agent, or guardian and ward, or trustee and cestui que trust, the same principles prevail, with

a larger and more comprehensive efficiency; and the burden
of proof is upon the agent, the guardian, or a trustee who
claims a benefit arising from the transaction to show the ut-
most good faith on his part, that he took no advantage of his
influence or knowledge, and that he brought everything to the
knowledge of the other party, which he himself knew. The
foregoing principles are too familiar for citation of text-books
or report. It is equally unnecessary to show by authority
that the most dominant influence of all relations is that of
the husband over the wife."

In this case the accountant, for nine years, and until he was
compelled by the court to file an account as administrator, re-
tained and claimed as his own the whole estate of the dece-
dent. He then filed an account charging himself with the
$400 which had been "advanced" to him, on account of the
share of the decedent in her mother's estate, but failed to ac-
count for the $407.64, on the alleged ground that she gave it
to him. The only evidence of the alleged gift is that of the
executors of the mother's estate; one of whom testified that
when the decedent received the $407.64, she passed it to the
accountant, saying, "That is yours;" and the other of whom
testified that she passed it to him saying "You just take it."
As between husband and wife, the expression "That is yours,"
is of little value to prove a gift, for it may mean, "yours to
use," "yours to keep for me," or any similar purpose.

But apart from its equivocal meaning, the testimony that
she made that expression does not agree with that of the other
executor, who testified that she, when she passed the money
to him, said, "Just take it." When the ambiguity of the
expression, "That is yours," is considered in connection with
the conflicting testimony of the other executor, it is utterly
inadequate to overcome the strong presumption of law arising
from the confidential relation, and of fact, arising from the
avaricious spirit which plainly controlled him in his dealings
with her estate.

He has been allowed to retain the interest money received
from her, amounting to $1,456.60, and the interest on the
$400, advanced to him by her mother, from the time he re-
ceived it until his wife's death; and as a distributee entitled
to share equally with his daughter, he received in this pro-

ceeding the further sum of $586.04. These sums aggregate more than $2,400. In addition to this, his compensation, which was excepted to, was allowed to stand, notwithstanding his obdurate persistence in claiming and keeping the whole estate for nine years after his wife's death.

It is my opinion that the accountant has failed to establish his claim to the $407.64, as donee of the decedent; and that there is no error in the distribution excepted to. The exceptions are, therefore, overruled.

*Error assigned* was the decree of the court.

*H. P. Keiser*, for appellant.

*Stephen M. Meredith*, for appellee.

OPINION BY BEAVER, J., February 25, 1907:

The adjudicating judge in the court below surcharged the appellant, as administrator of his wife's estate, with certain money received by him from his wife in the settlement of her mother's estate. The amount due her in said settlement was $807.50. From this was deducted a note of her husband due the estate, amounting to $400. The balance was paid to her in cash and handed to her husband in the presence of the executors.

The administrator, whilst charging himself with the amount of the note which was deducted, claims that the cash was a gift from his wife to him. The adjudicating judge heard the testimony in the court below and found as a fact that the wife did not, by handing over the money to her husband, under the circumstances, with a remark as to which the two executors in their testimony differ, intend, and did not as a fact make, a gift thereof to him.

The original adjudication of the court below, with its distinct findings of fact, is full and exhaustive. In an opinion, disposing of the exceptions thereto, he also reviews the entire case. The facts are fully stated therein, the authorities cited and commented upon, and we are all of the opinion that they fully justify his conclusion.

Decree affirmed and appeal dismissed, at the costs of the appellant.